UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN I. GUZMAN,<br>Petitioner,<br>v.<br>JIM ROBERTSON, Warden,<br>Respondent. | Case No. 18-05015 EJD (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY; DIRECTIONS TO CLERK** |

Petitioner filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction. (Docket No. 1.) Finding the petition stated cognizable claims, the Court ordered Respondent to show cause why the writ should not be granted.[1] (Docket No. 5.) Respondent filed an answer on the merits. (Docket No. 10.) Petitioner did not file a traverse although given an opportunity to do so. For the reasons set forth below, the Petition for a Writ of Habeas Corpus is **DENIED**.

## I. BACKGROUND

Petitioner was found guilty by a jury in Santa Clara County Superior Court of first

---

[1] The matter was reassigned to this Court on December 4, 2018. (Docket No. 8.)

degree murder, (Cal. Pen. Code §§ 187, 189); the jury also found true allegations that he personally and intentionally discharged a firearm causing death, (Cal. Pen. Code § 12022.53(d)), and that he committed the offense for the benefit of a criminal street gang, (Cal. Penal Code § 186.22(b)(1)(C)). (Ans. Ex. 1, Volume 3 Clerk's Transcript (3 CT) at 553, 555-557, 560.[2])

The trial court sentenced Petitioner to 25 years to life for first degree murder and 25 years to life for the firearm enhancement, for a total of 50 years to life in prison. (3 CT 589-592; Ex. 2, Volume 7 of Reporter's Transcript (7 RT) at 1497.) An additional ten years for the gang enhancement was stayed. (Id.)

On April 14, 2015, the California Court of Appeal initially affirmed the judgment of conviction. (Docket No. 1-2 at 147-156.[3]) Petitioner sought review on the two issues raised in this action: (1) whether there was sufficient evidence to support the gang enhancement; and (2) whether his sentence constituted cruel and unusual punishment. (Docket No. 1.) The California Supreme Court granted review on the cruel and unusual punishment issue and deferred the case until resolution of other pending cases raising the same issue. (Ex. 3, appellate court docket sheet.) The California Supreme Court ultimately remanded the case to the appellate court for consideration in light of its decision in People v. Franklin, 63 Cal.4th 261, 283-284 (2016). (Ex. 3; Docket No. 1-2 at 89.)

On remand, Petitioner filed a supplemental brief conceding that he did not need to be resentenced. (Docket No. 1-2 at 166.) On April 18, 2017, the California Court of Appeal issued a new opinion rejecting the gang enhancement issue, finding the cruel and unusual punishment issue moot in light of new state legislation, and remanding the case to the trial court for a determination of whether Petitioner was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing.

---

[2] All references herein to exhibits are to the exhibits submitted by Respondent in support of the answer, unless otherwise indicated. (Docket Nos. 11-1 through 11-4.)

[3] The California Court of Appeal's opinions on appeal (initial appeal and on remand) were attached to the petition for writ of habeas corpus. (Docket No. 1-2 at 147-156, Docket No. 1-2 at 171-181, respectively.)

1  (Docket No. 1-2 at 88.) Petitioner again sought review on the gang enhancement issue.

2  (Docket No. 1-2 at 69.) On June 28, 2017, the California Supreme Court summarily

3  denied review. (Ex. 3 at 5.)

4  Petitioner filed the instant habeas petition on August 16, 2018.

## II. STATEMENT OF FACTS

The following facts are taken from the opinion of the California Court of Appeal on direct appeal after remand:

***The Shooting***

> At approximately 5:00 p.m. on January 21, 2011, Hugo Gutierrez rode a bicycle on Capitol Expressway in San Jose. Defendant, who was also riding a bicycle, followed Gutierrez. Defendant pointed a gun at Gutierrez and fired. Gutierrez got off his bicycle, ran toward a restaurant, and fell down outside the restaurant. Defendant jumped off his bicycle and walked toward Gutierrez. Gutierrez attempted to stand up, but he lost his footing. Gutierrez put up his hands in an effort to shield himself, and he screamed for help. Defendant began "rapidly firing" the gun at Gutierrez. Gutierrez was "just lying there" on the ground, and defendant fired multiple shots at him. Defendant then jumped on his bicycle and rode away.
>
> Gutierrez suffered gunshot wounds on his chest, abdomen, arms, and legs. One of the bullets struck Gutierrez's heart, and it killed him.

***Gang Evidence***

> At the time of the shooting, defendant was a member of Kollmar Vago Trece (hereafter "KVT"), a Sureño street gang. Gutierrez was a member of Just Busting Funk (hereafter "JBF"), a Norteño street gang. There is a longstanding rivalry between Sureño gangs and Norteño gangs.
>
> Gang Detective Carlos Garcia testified as an expert in "Hispanic criminal street gangs, specifically KVT." His expertise was based on the following: academic training regarding criminal street gangs; four and a half years of patrolling the streets of San Jose, including gang areas; contact and conversations with 250 gang members and affiliates, including KVT members; regular conversations with gang detectives and homicide detectives, including conversations regarding the operations of KVT; and conversations with agents from other law enforcement agencies.

>        Detective Garcia opined that, as of January 21, 2011, the primary
> activities of KVT were assaults with deadly weapons and firearms
> possession as prohibited by former section 12025.  He explained that KVT
> members engaged in those activities "regularly" and on a "consistent
> basis," not just occasionally.  His opinion regarding the primary activities
> of KVT was based on conversations with gang members, conversations
> with other law enforcement officials, and prior police documentation.
>
>        Detective Garcia described prior crimes committed by KVT
> members.  On July 15, 2010, two KVT members were in a car, and they
> possessed a sawed-off shotgun and shotgun ammunition.  A KVT member
> committed assault with a deadly weapon, a stabbing with a knife, on
> November 20, 2008.  Detective Garcia explained that "violence is very
> important in the gang world," that gang members "must show a reputation
> of being violent and powerful," and that gangs gain power and respect
> through violence.
>
>        Detective Garcia opined that defendant killed Gutierrez for the
> benefit of KVT.  He explained that Gutierrez was a Norteño gang member,
> and he was riding his bicycle in KVT territory.  Gutierrez's conduct was the
> "ultimate form of disrespect in gang culture."  Gang members retaliate
> against such disrespect with "public acts of violence."  Defendant's "very
> public" act of violence increased KVT's power and influence because it
> showed that KVT members would "do whatever is necessary" to protect
> their territory.

People v. Guzman, No. H039286, slip op. at 2-4 (Cal. Ct. App. Apr. 18, 2017) (Docket No. 1-2 at 171-181) (hereinafter "Op.").

### III.  DISCUSSION

**A.**     **Standard of Review**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or

4

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"; rather, that application must also be unreasonable. Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. Furthermore, the federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

Here, as noted above, the California Supreme Court summarily denied Petitioner's petition for review. See supra at 2; (Ex. 3). The California Court of Appeal, in its opinion on direct review on remand, addressed all the claims raised in the instant petition. (Docket No. 1-2 at 171-181.) The Court of Appeal thus was the highest court to have reviewed those claims in a reasoned decision, and it is the Court of Appeal's decision that this Court reviews herein. See Wilson v. Sellers, 138 S. Ct. 1188, 1192-93 (2018); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005); Cannedy v. Adams, 706 F.3d 1148, 1156 (9th Cir. 2013).

## B. Claims and Analysis

Petitioner raises the following grounds for federal habeas relief: (1) there was insufficient evidence to support the gang enhancement; and (2) his sentence constitutes cruel and unusual punishment. (Docket No. 1 at 5.)

### 1. Insufficient Evidence

Petitioner claims there was insufficient evidence to support the gang enhancement under Cal. Penal Code § 186.22. (Pet. at 5, 9.) Specifically, Petitioner challenges whether there was sufficient evidence that KVT members consistently committed crimes for purposes of the "primary activities" element of the enhancement. (Id.)

The state appellate court rejected this claim on direct appeal:

> In order to prove the gang enhancement, the prosecution had to present substantial evidence establishing that KVT was a "criminal street gang." (§ 186.22, subd. (b)(1); *People v. Vy* (2004) 122 Cal.App.4th 1209, 1221 (*Vy*).) Section 186.22 defines that term as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal activity." (§ 186.22, subd. (f).) "Therefore, the 'criminal street gang' component of a gang enhancement requires proof of three essential elements: (1) that there be an 'ongoing' association involving three or more participants, having a 'common name or common identifying sign or symbol'; (2) that the group has as one of its 'primary activities' the commission of one or more

6

specified crimes; and (3) the group's members either separately or as a group 'have engaged in a pattern of criminal gang activity.'" (*Vy, supra*, 122 Cal.App.4th at p. 1222.)

Here, Detective Garcia opined that the primary activities of KTV were assaults with deadly weapons and firearms possession in violation of former section 12025. Defendant does not dispute that those offenses are qualifying crimes enumerated in section 186.22, subdivision (e). Rather, he contends that there was insufficient evidence that KVT members consistently committed those crimes.

"The phrase 'primary activities,' as used in the gang statute, implies that the commission of one or more of the statutorily enumerated crimes is one of the group's 'chief' or 'principal' occupations. [Citation.] That definition would necessarily exclude the occasional commission of those crimes by the group's members." (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323.) "Sufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute. Also sufficient might be expert testimony…." (*Id.* at p. 324, italics in original.) "[E]vidence of either past or present criminal acts listed in subdivision (e) of section 186.22 is admissible to establish the statutorily required primary activities of the alleged criminal street gang." (*Id.* at p. 323.) The jury may "consider the circumstances of the charged crimes on the issue of the group's primary activities." (*Id.* at p. 320.)

Contrary to defendant's assertion, the prosecution presented substantial evidence in support of the primary activities element of the gang enhancement. Detective Garcia opined that KVT members committed assaults with deadly weapons and committed firearms possession in violation of former section 12025 "regularly" and "on a consistent basis." He had an adequate basis upon which to base his opinion: his opinion was based on conversations with KVT members and members of other gangs, regular conversations with other law enforcement officials, and police documentation of KVT activities. (See *Vy, supra*, 122 Cal.App.4th at p. 1223, fn. 9 [a gang expert may give opinion testimony that is based upon hearsay, including conversations with gang members and information the expert has learned from colleagues and law enforcement agencies].) Detective Garcia's opinion testimony was sufficient to establish the primary activities element of the gang enhancement. Other evidence, however, bolstered his opinion. The prosecution presented evidence of crimes committed by KVT members between 2008 and 2011: a stabbing in 2008, possession of a sawed-off shotgun in 2010, and defendant's use of a gun to kill Gutierrez in 2011. Detective Garcia also testified that "violence is very important in the gang world," and he explained that gang members

7

>must engage in violence in order to gain power and respect. The evidence of KVT's crimes between 2008 and 2011, combined with Detective Garcia's testimony regarding the importance and necessity of violence in gang culture, strongly suggested that KVT members consistently and repeatedly committed assaults with deadly weapons and possessed firearms in violation of former section 12025. Accordingly, based on the totality of the foregoing evidence, we conclude that there was sufficient evidence to support the primary activities element of the gang enhancement. (See *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1330 [sufficient evidence established the primary activities enumerated in section 186.22 and the charged offense was consistent with the expert's testimony].)
>
>Defendant asserts that there was insufficient evidence to support the primary activities element because Detective Garcia "offered no evidence of the number" of times KVT members committed assaults with deadly weapons and possessed firearms in violation of former section 12025. Defendant emphasizes that Detective Garcia did not provide "meaningful numbers that would allow the jury to reach an informed conclusion." Defendant's argument is unconvincing. Defendant concedes that no authority requires an expert to state the specific number of times a gang has engaged in its primary activity. Moreover, although it might have been helpful to the jury if Detective Garcia had provided specific numbers, we cannot conclude that [] such testimony was necessary here. As explained above, we believe that the totality of the evidence provided an adequate basis for the jury to conclude that KVT members consistently and repeatedly committed assaults with deadly weapons and possessed firearms in violation of former section 12025. We therefore must conclude that sufficient evidence supported the primary activities element of the gang enhancement.

(Op. at 5-7.)

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). The Supreme Court has emphasized that sufficiency of the evidence types of "claims face a high bar in federal habeas proceedings . . ." Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam) (finding that the Third Circuit "unduly impinged on the jury's role as factfinder" and failed to apply the deferential standard of Jackson [v. Virginia, 443 U.S. 307, 321 (1979)] when it engaged in "fine-grained factual parsing" to find that the evidence was insufficient to support petitioner's conviction). A federal court reviewing collaterally a state court conviction

does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992); see, e.g., Coleman, 566 U.S. at 656 ("the only question under Jackson is whether [the jury's finding of guilt] was so insupportable as to fall below the threshold of bare rationality"). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Payne, 982 F.2d at 338 (quoting Jackson, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, has there been a due process violation. Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338; Miller v. Stagner, 757 F.2d 988, 992-93 (9th Cir.), amended, 768 F.2d 1090 (9th Cir. 1985), cert. denied, 475 U.S. 1048, and cert. denied, 475 U.S. 1049 (1986); Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir.), cert. denied, 469 U.S. 838 (1984).

The state appellate court's rejection of this claim was not unreasonable. It first reviewed the three elements necessary for proving the gang enhancement under Penal Code section 186.22. See supra at 6. Then it reviewed the definition of "primary activities" under state law and what type of evidence would be sufficient to establish primary activities, which included expert testimony. Id. at 7. Lastly, the state court reviewed the evidence in support of the primary activities element: the prosecution's expert witness opined that KVT members committed qualifying crimes "regularly" and "on a consistent basis"; the expert's opinion was credible because it was based on conversations with KVT members, members of other gangs, and with other law enforcement officials, as well as police documentation of KVT activities; the expert also testified that "violence is very important in the gang world" in order for gangs to gain power and respect; and lastly, the expert's testimony was bolstered by evidence of other crimes involving assaults with deadly weapons and possession of firearms committed by KVT members between 2008 and 2011. Id. Viewing the evidence in the light most favorable to Respondent, it was reasonable for the state appellate court to conclude that, "based on the totality of the foregoing evidence," there was sufficient evidence to support

the primary activities element of the gang enhancement. Id. at 8. Furthermore, it matters not that the prosecution's expert witness did not present "meaningful numbers that would allow the jury to reach an informed conclusion." Id. This Court need only determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Payne, 982 F.2d at 338. On this record and weight of evidence, the Court is not persuaded that no rational trier of fact could have found proof of guilt beyond a reasonable doubt to establish a due process violation. See Jackson, 443 U.S. at 324. Accordingly, the state courts' rejection of this claim was not contrary to, or involved an unreasonable application of, Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to habeas relief on this claim.

### 2. **Cruel and Unusual Punishment**

Petitioner's second claim is that his sentence of 50 years to life constitutes cruel and unusual punishment in violation of the Eighth Amendment. (Pet. at 5.) Respondent asserts that although Petitioner fairly presented the Eighth Amendment issue in his first petition for review to the California Supreme Court, which granted review and remanded the case to the appellate court for consideration in light of Franklin, (Op. at 7-10), he did not re-raise the issue in his second petition for review after the appellate court issued its second opinion. (Ans. at 7, fn. 7.) While it is somewhat unclear whether the claim is exhausted, Respondent asserts that it clearly may be denied as meritless for the reasons explained in their answer. (Id., citing 28 U.S.C. § 2254(b)(2).) Petitioner has filed no traverse in response.

As discussed by the state appellate court, the Supreme Court held in Miller v. Alabama, 567 U.S. 460, 465 (2012), that a mandatory sentence of life without possibility of parole for those under the age of 18 at the time of the crime violates the Eighth Amendment's constitutional prohibition on cruel and unusual punishment. (Op. at 8.) In response to Miller, the California Legislature passed new legislation, including Cal. Penal Code § 3051, which requires the Board of Parole Hearings to conduct a youth offender

10

parole hearing during the 15th, 20th, or 25th year of a juvenile offender's incarceration, at which the juvenile's diminished culpability due to youth shall be given great weight. (Id.) Accordingly, in People v. Franklin, 63 Cal.4th at 276-277, the California Supreme Court held that the new laws rendered moot any claim that a lengthy sentence for a juvenile violates Miller. (Op. at 8-9.) On remand, the state appellate court in Petitioner's case followed Franklin in finding the cruel and unusual punishment claim moot and remanded the case to the trial court to ensure that Petitioner was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing. (Id. at 9-10.)

Respondent first asserts that habeas relief is unavailable because the Supreme Court has not clearly established that a juvenile sentence *other than* life without the possibility of parole violates the Eighth Amendment. (Ans. at 8.) The Court agrees. The Supreme Court's holding in Miller was narrow, and specifically found that only "mandatory life-*without*-parole sentences for juveniles violate the Eighth Amendment." 567 U.S. at 464 (emphasis added). Therefore, as Respondent asserts, for this Court to find that Petitioner's sentence of 50 years to life is the "functional equivalent of an LWOP sentence" as Petitioner contends, (Ex. 3 at 36), would amount to an extension of clearly established law in Miller, which is unavailable under 28 U.S.C. § 2254(d). See Yarborough v. Alvarado, 541 U.S. 652, 666 (2004) ("if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision…. Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extension to existing law.") This conclusion is consistent with the Ninth Circuit's reasoning in Demirdjian v. Gipson, 832 F.3d 1060 (9th Cir. 2016), which rejected a claim that two consecutive terms of 25 years to life violates Miller because the sentence was the functional equivalent of mandatory life-without-parole sentence. Rather, the Ninth Circuit determined that there was a reasonable argument that petitioner's sentence, which was not a life-without-parole sentence, was not contrary to Miller because it still allowed for the possibility of parole. Id. at 1076-77.

Secondly, the state appellate court reasonably determined that this claim was rendered moot since the passage of § 3051 effectively converted Petitioner's life sentence to one *with* the possibility of parole. Since Demirdjian,[4] the Ninth Circuit has specifically recognized that states may remedy a Miller violation with legislation permitting a juvenile offender to be considered for parole, and that § 3051(b)(4) "effectively moots a Miller claim by converting a juvenile's LWOP sentence into one for life with the possibility of parole after 25 years." Bunn v. Lopez, 740 Fed.Appx. 145, 147 (9th Cir. 2018). Indeed, Petitioner conceded in his post-Franklin brief that resentencing was unnecessary in light of the new California laws. (Docket No. 1-2 at 166.)

Based on the foregoing, the state court's rejection of this Eighth Amendment claim as moot was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Petitioner is not entitled to federal habeas relief on this claim.

## IV.  CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus must be **DENIED**.

Further, a Certificate of Appealability is **DENIED**. See Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a

---

[4] In Demirdjian, the appellate court noted the recent enactment of § 3051 but found that because the new authority would not change its holding, the court would neither rely on it nor decide whether § 2254(d)(1) permits it to do so. 832 F.3d at 1077, fn. 13.

12

certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED**.

Dated: 10/31/2019

EDWARD J. DAVILA
United States District Judge

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\EJD\HC.18\05015Guzman_denyHC

13